IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

REGINA D. KURTH,

                       Plaintiff,              OPINION AND ORDER

    v.

                                                       08-cv-046-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       Because Judge Shabaz will be convalescing from shoulder surgery for an extended period of time, I have assumed administration of the cases previously assigned to him, including this one, which is an action for judicial review of an adverse decision of the commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g).  Plaintiff Regina D. Kurth seeks reversal of the commissioner's decision that she is not disabled and therefore ineligible for Disability Insurance Benefits under Title II of the Social Security Act, codified at 42 U.S.C. §§ 416(i) and 423(d).  Plaintiff contends that the administrative law judge failed to properly consider her fibromyalgia and her anxiety disorder and improperly determined her credibility.  I find that the administrative law judge did not properly consider the clinical indicators of plaintiff's fibromyalgia, including her multiple tender points and her

1

subjective symptoms of over-all body pain and fatigue.   I also conclude that the administrative law judge failed to build an accurate and logical bridge between the evidence and his determination that plaintiff's subjective complaints lacked credibility.   For these reasons, I am reversing the commissioner's determination and remanding this case to the commissioner for further proceedings.

The following facts are drawn from the administrative record (AR):

FACTS

A.  Background and Procedural History

Plaintiff was born on September 23, 1954.  AR 431.  She has an eleventh grade education and work experience as a cashier and a courier.  AR 431, 477.

Plaintiff filed an application for disability insurance benefits on November 1, 2002, alleging that she became disabled on July 15, 1998 because of fibromyalgia and affective and substance abuse disorders.  AR 94-96.  Plaintiff subsequently amended her disability onset date to March 20, 2000.  AR 473.  Plaintiff's last insured date was September 30, 2003.  AR 60.  At the time she filled out her application, plaintiff reported her daily activities as doing a little cooking and cleaning each day.  AR 123.

The local disability agency denied her application initially and upon reconsideration finding that plaintiff was not disabled.  AR 55-56.  Plaintiff then requested a hearing, which

2

was held on August 3, 2005 before Administrative Law Judge Arthur J. Schneider in Madison, Wisconsin. AR 484-545. The administrative law judge heard testimony from plaintiff, who was represented by a lawyer; her husband; a neutral medical expert; and a neutral vocational expert. AR 488-543. On August 24, 2005, the administrative law judge issued his decision, finding plaintiff not disabled. AR 60-65. Plaintiff appealed.

In an order dated May 3, 2006, the appeals council remanded, finding that the administrative law judge did not properly consider plaintiff's complaints of fatigue, whole-body pain and tenderness on palpation in evaluating her fibromyalgia; did not properly assess plaintiff's credibility; and did not consider the testimony of plaintiff's husband. AR 67-69. The appeals council instructed the administrative law judge to obtain evidence from a medical expert such as a rheumatologist or internist, if possible, to clarify the nature and severity of the plaintiff's fibromyalgia during the period at issue and to further evaluate plaintiff's subjective complaints and provide his rationale for his determination in accordance with 20 C. F. R. § 404.1529 and Social Security Ruling 96-7p. AR 68.

The hearing on remand was held on May 22, 2007 before the same administrative law judge, AR 427-83, who heard testimony from plaintiff, a neutral medical expert and a neutral vocational expert. AR 430-80. On June 22, 2007, the administrative law judge issued his decision finding plaintiff not disabled. AR 15-24. This decision became the final

decision of the commissioner when the appeals council denied plaintiff's request for review on November 21, 2007.  AR 6-8.

B.  Medical Evidence

1.  Records prior to plaintiff's last insured date

Plaintiff began treatment for recurrent depression with psychiatrist William Sullivan on September 15, 1999.  AR 202-204.  Dr. Sullivan saw plaintiff monthly in 2003 and prescribed Paxil.  AR 237-41, 357-63.  On June 16, 2003, Dr. Sullivan noted that plaintiff was very impaired by fibromyalgia.  AR 358.

In October 2002, plaintiff began seeing Howard Gartland, Ph.D., for pain management and anxiety.  AR 209.  Dr. Gartland noted that plaintiff experienced panic attacks when in a car but was able to tolerate the symptoms when riding around town.  AR 206.  He indicated that her fibromyalgia pain was fairly consistent and manageable and that she had trouble sleeping.  AR 206.

On December 12, 2002, plaintiff was examined by rheumatologist Dr. Muhammad Shamim, who diagnosed plaintiff with fibromyalgia with chronic wide spread soft tissue pain, irritable bowel syndrome, recurrent headaches, sleep disorder, mitral prolapse and presence of multiple soft tissue tender points in all four quadrants.  He also noted that plaintiff had a history of depression and alcohol abuse.  Plaintiff complained of over-all body pain and

trouble sleeping.  AR 221.  Dr. Shamim encouraged plaintiff to continue seeing Dr. Sullivan and Dr. Gartland for her depression.  He prescribed Ultram and recommended to plaintiff that she participate in regular physical activity.  AR 222.

On September 30, 2003, plaintiff began seeing rheumatologist Dimitrios Fanopoulos. Plaintiff reported pain and stiffness in her fingers, fatigue and weakness in her arms.  After examining plaintiff that day, Dr. Fanopoulos noted that she had moderate tender points on palpation throughout but no joint swelling.  He diagnosed her with moderate fibromyalgia and encouraged her to participate in conditioning exercises such as aerobics and stress reducing modalities, namely yoga and bio-feedback.  AR 403-04.

2. <u>Records after plaintiff's last insured date</u>

On November 11, 2003, plaintiff returned to see Dr. Fanopoulos and reported pain and stiffness in her fingers.  He diagnosed her with severe fibromyalgia.  AR 401-02. On February 2, 2004,  Dr. Fanopoulos saw plaintiff and prescribed Skelaxin for her.  AR 400. After seeing plaintiff on April 1, 2004, Dr. Fanopoulos noted that she was doing better and that there were tender points on palpation for moderate fibromyalgia.  AR 399.  On July 1, 2004, Dr. Fanopoulos saw plaintiff and noted that the Skelaxin was helping her a lot.  He indicated plaintiff had no peripheral synovitis and no peripheral edema.  He also indicated that she had preserved her range of movements.  AR 398.  On August 12, 2004, plaintiff had

stiffness on range of movements of the fingers but no synovitis or tenderness on palpitation of the rib area.  AR 397.

In September 2004, plaintiff had to discontinue Celebrex because it gave her heartburn.  Dr. Fanopoulos prescribed Bextra instead.  AR 395.  On October 29, 2004, plaintiff complained of leg pain and bone pain.  Because she reported no improvement with Bextra, Dr. Fanopoulos prescribed Mobic and continued her on Skelaxin.  AR 394. However, by December 10, 2004, plaintiff discontinued her medications because she had run out and the Skelaxin "did not help much." AR 393.  Dr. Fanopoulos changed her Skelaxin to SOMA.  On January 21, 2005, plaintiff reported diffuse pain all over.  Upon examination, Dr. Fanopoulos noted tender points on palpation throughout for fibromyalgia-controlled sites and diagnosed her with severe fibromyalgia.  AR 392.  Plaintiff reported continuing diffuse aches and pains in March 2005.  AR 391.

On July 19, 2005, Dr. Robert Braco examined plaintiff at the request of Dr. Fanopoulos and assessed her residual functional capacity.  He indicated that plaintiff met the American College of Rheumatology criteria for a diagnosis of fibromyalgia syndrome. He also noted diagnoses of drug and alcohol dependence, trigeminal neuralgia, depression, panic disorder and post traumatic stress disorder.  AR 367.  Dr. Braco indicated that plaintiff had multiple tender points in her arms and legs.  AR 368.  He also noted that plaintiff's symptoms frequently interfered with attention and concentration and that she was severely

6

limited in dealing with work stress.  AR 369.  Plaintiff told him: "There's nothing that isn't sore" and "It doesn't matter where you touch it all hurts."  AR 368.

Dr. Braco concluded that plaintiff could sit two hours and stand or walk two hours in an eight-hour work day, with the ability to change positions at will, and could lift six pounds occasionally and less than six pounds frequently with limited repetitive reaching handling and fingering.  He concluded that plaintiff would need to be absent from work more than three times a month.  He noted that plaintiff's ability to work depended on her obtaining regular psychiatric care.  AR 370-72.

On May 4, 2006, Dr. Fanopoulos wrote a letter stating he was treating plaintiff for fibromyalgia and that she had a significant psychiatric component to her pains.  He added that he agreed with Dr. Braco's assessment and thought that plaintiff might not be able to work competitively because of her joint discomfort and pain.  AR 405.

On June 5, 2007, Dr. Fanopoulos responded to interrogatories sent to him by plaintiff's lawyer.  He stated that he adopted Dr. Braco's residual functional capacity assessment and that he would apply the limitations beginning on September 30, 2003.  AR 425.

From 2004-2007, plaintiff saw psychiatrist Dr. Adedapo Oduwole.  AR 347-56, 406-23.  On July 26, 2005, Dr. Odulwole completed a mental residual functional capacity questionnaire for plaintiff.  He noted plaintiff's diagnoses of panic disorder, post traumatic

stress disorder and recurrent major depressive disorder and wrote that she was not responding to Paxil. AR 373. Dr. Odulwole also marked boxes indicating that plaintiff had no useful ability to function with respect to the following mental abilities and attitudes:

- Sustain an ordinary routine without special supervision;

- Work in coordination or proximity to others without being distracted;

- Complete a normal workday and workweek without interruption from psychologically based symptoms;

- Perform at a consistent pace without and unreasonable number and length of rest periods; and

- Deal with normal work stress.

AR. 375. He also indicated that plaintiff's impairments or treatments would cause her to be absent from work more than four days a month.

On June 13, 2006, Dr. Oduwole saw plaintiff, noting that she was generally doing very well and had just returned from Sweden. Specifically, he wrote: "Klonopin actually helped for her vacation in Sweden. Had a wonderful time in Sweden." AR 420. On September 12, 2006, Dr. Oduwole saw plaintiff and wrote that plaintiff reported a good response to Cymbalta. He noted that her chronic pain had improved with this medication and that she was doing much better. AR 417. On March 20, 2007, Dr. Oduwole noted after seeing plaintiff that she was generally doing much better. AR 411.

C.  Consulting Physicians

On January 15, 2003, state agency consulting physician Dr. Pat Chan assessed plaintiff's physical residual functional capacity, noting that plaintiff had been diagnosed with fibromyalgia and depression.  He concluded that plaintiff could lift 10 pounds frequently and 20 pounds occasionally, stand or walk six hours in an eight-hour work day, sit six hours in an eight-hour work day and had no limitations on pushing and pulling.  AR 256-263.  On May 12, 2003, a second state agency consulting physician affirmed this assessment.  AR 263.

On January 16, 2003, state agency consulting psychologist Jack Spear completed a Psychiatric Review Technique Form for plaintiff.  He evaluated the evidence under the listing categories for affective disorders and substance addiction disorders.  In addressing the "B" criteria for these listings, he found plaintiff had no restrictions of activities of daily living; no difficulties in maintaining social functioning; no difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation.  Spears concluded that the evidence did not establish the presence of the "C" criteria.  AR 242-255.  On May 8, 2003, a second state agency consulting psychologist affirmed this assessment.  AR 242.

D.  Hearing Testimony

Plaintiff testified at both the 2005 hearing and the 2007 hearing on remand.  She stated that she had last worked in July 1998 as a part-time cashier and left that job because

of illnesses and personal problems.  She collected unemployment benefits for eight weeks.
AR 432, 489.  Plaintiff also testified that between 1992 and 1996, she had worked as a
courier.  AR 434.  In 1997, her driver's license was suspended after she got a ticket for
driving while intoxicated and she does not have a driver's license.  AR 450.

Plaintiff testified that she has fibromyalgia, major depression, panic disorder, anxiety
and arthritis.  AR 434.  She described her physical symptoms as chronic fatigue, losing her
balance and considerable daily pain in her neck, back, hips and legs.  AR 435, 494-95.
Plaintiff further testified that she has memory problems, dizziness and problems sleeping.
AR 440-41, 499.

Plaintiff testified that she rests on her couch to relieve the pain and takes warm
showers.  AR 437, 496.   She also testified that she takes a lot of naps.  AR 439.  Plaintiff
testified that she took Trazodone, Topomax, Celebrex and Skelaxin for pain.  AR 504-05.
She explained that these medications produce side effects, namely dizziness, drowsiness,
blurred vision and dry mouth.

Plaintiff testified that she was being treated for depression and anxiety.  AR 443.  She
explained that she had panic attacks in vehicles and experienced anxiety in crowds.  AR 444.
She testified that she had periods of depression every six months and took Cymbalta and
Amitriptyline for depression.  AR 447.  Plaintiff explained that she had had problems with

alcohol and cocaine but had been sober since March 20, 2000.  She testified that she goes to Alcohol Anonymous meetings twice a week.  AR 451, 455.

Plaintiff described her daily activities as helping her husband with the cooking and laundry and doing the dishes.  AR 449.  She testified that she could no longer crochet, do bead work or sew because of numbness in her hands.  AR 509.  At the first hearing, plaintiff's husband confirmed that she was in constant pain, which limited her activities.  AR 522.  He also testified that plaintiff had panic attacks in cars and in public places.  AR 525.

At the conclusion of plaintiff's testimony, the administrative law judge made the following comments:

> It's always difficult when you have to come back to same judge, and argue your case.  And the first time through I listened to the evidence very carefully.  And that's what I based my decision on.  I was not trying to rule against you because I, for personal reasons.  Although I felt the comments from the Attorney in his letter to the Appeals Council were very strong, he well knows that he has the ability to ask for a different judge.

AR 456-457.

Dr. Larry Larrabee, a clinical psychologist, testified as a neutral medical expert at both hearings.  At the second hearing, Dr. Larrabee asked plaintiff to describe her usual day.  AR 459.  She responded that she did a little cleaning and cooking, spent time outside, rested and took a nap.  AR 460-63.  He also asked her about her emotional problems and her past drinking.  Plaintiff responded that her alcohol and drug use was full blown in 1998 and that she drank to function and to alleviate her physical and mental pain.  AR 464.

11

The administrative law judge asked Dr. Larrabee to identify plaintiff's mental impairments.  He identified affective disorder, anxiety related disorder and substance abuse disorder.  AR 472.  With plaintiff's consent, her lawyer amended her alleged onset date to March 20, 2000, her sobriety date.  AR 473.  Dr. Larrabee then considered the "B" criteria for plaintiff's affective and anxiety disorders and found she had mild to moderate restrictions in her activities of daily living; mild to moderate difficulties in social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation.  AR 474.

Leslie Goldsmith testified as a neutral vocational expert at the hearing on remand. The administrative law judge advised her as follows, "If in the testimony you're about to provide, if there's any conflict between your testimony regarding the occupational evidence and the information in the Dictionary of Occupational Titles, and its companion publication, the Selected Characteristics of Occupations, would you please tell us that in today's hearing?"  Goldsmith responded, "Yes."  AR 476.

Goldsmith testified that plaintiff's past jobs as cashier and courier were defined in the Dictionary of Occupational Titles as light, unskilled work.  The administrative law judge asked whether plaintiff's past work could be performed by an individual of plaintiff's age, education and work experience who was limited to lifting 20 pounds occasionally and less than 10 pounds frequently, standing for six  hours and sitting six hours in an eight-hour work

day and performing simple, routine and repetitive work.  Goldsmith testified that such an individual could perform plaintiff's past work as well as other jobs in the national economy, including unskilled assembly jobs (15,000 jobs in Wisconsin), packaging jobs (20,000 jobs in Wisconsin), unskilled office helper jobs (50,000 jobs in Wisconsin) and cashiering jobs (70,000 jobs in Wisconsin).  AR 477.

The administrative law judge asked Goldsmith a second hypothetical question adding the limitation that the individual would require a sit or stand option every 30 minutes. Goldsmith responded that the individual could not perform the past work as a cashier but could perform the courier job as well as 3,000 assembly jobs, 3,000 or 4,000 packing jobs and 25,000 general office clerk jobs available in Wisconsin.  AR 478.   In the third hypothetical the administrative law judge added the limitations that the individual could lift 10 pounds occasionally and five pounds frequently and have limited contact with the public. Goldsmith responded that such an individual could not perform plaintiff's past work but could perform half the assembly and packing jobs and 10,000 general office clerk jobs.  AR 479.

## F.   The Administrative Law Judge's Decision

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  20 C.F.R. § 404.1520.  At step one, he

found that plaintiff had not engaged in substantial gainful activity from her alleged onset date of July 15, 1998 through her date last insured, September 30, 2003.  At step two, the administrative law judge found that plaintiff had severe impairments of fibromyalgia and affective and substance abuse disorders.   AR 18.

The administrative law judge found at step three that plaintiff did not have a physical impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  AR 19.  The administrative law judge relied on the testimony of the medical expert to find that plaintiff had at most mild to moderate limitations of daily living and social functioning and mild limitations in concentration persistence and pace with no episodes of decompensation and that there was no evidence that plaintiff met the "C" criteria.   He then concluded that her mental impairment did not meet or equal a listed impairment.  AR 19.

In finding that plaintiff's fibromyalgia did not meet a listed impairment, the administrative law judge stated that "[t]he diagnosis of fibromyalgia rests primarily on the claimant's subjective complaints and demonstration of an unspecific number of tender points: this is insufficient to show any listing level physical impairment."  AR 20.  After noting that plaintiff's x-rays and bone scans were normal and that she had no synovitis or swelling, the administrative law judge concluded that plaintiff's subjective complaints of fatigue and whole body pain were not objective medical evidence and should be evaluated

14

under the criteria of credibility rather than as establishing the existence of a medically determinable impairment.  AR 19.

At step four, the administrative law judge determined that plaintiff retained the residual functional capacity to perform simple, routine, repetitive light work activity.  AR 20. In making this determination, he considered the opinions of plaintiff's physicians.  The administrative law judge did not give controlling weight to Dr. Braco's 2005 assessment that plaintiff had severe limitations.  He noted that Dr. Braco had seen plaintiff only once, several years after her disability insured status had expired and "based his assessed limitations on the claimant's allegations that 'there's nothing that isn't sore' and 'it doesn't matter where you touch, it all hurts.'"  AR 22.  The administrative law judge stated:

> The limitations appear to be based on the claimant's complaints of tenderness, subjective allegations of inability to do anything, and allegations of having pain everywhere.

AR 22.

The administrative law judge noted that Dr. Fanopoulos had adopted Dr. Braco's limitations as his own and stated that they applied back to September 30, 2003, which coincidentally was the first time that he saw plaintiff and the last day of her insured status. The administrative law judge discounted Dr. Fanopoulos's endorsement of the limitations because it was not consistent with his contemporary or subsequent treatment notes, the contemporary diagnosis or plaintiff's subsequent activities.  AR 23.  The administrative law

15

judge stated that Dr. Fanopoulos did not examine plaintiff until October 1, 2003 and found no joint swelling and only some tenderness.  He noted that Dr. Fanopoulos's "diagnosis at that time was of no more than moderate fibromyalgia, far less severe than his report of June 5, 2007 reflects."  AR 22.  The administrative law judge pointed out that Dr. Fanopoulos made no further reference to fibromyalgia until April 2, 2004, when he noted tender points on palpation, and July 1, 2004, when he reported that plaintiff had preserved her range of motion and had no synovitis.  AR 23.

The administrative law judge gave little weight to Dr. Oduwole's mental residual functional capacity assessment that plaintiff had severe limitations.  He noted that Dr. Oduwole had not seen plaintiff until after her insured status had expired and that his opinion was not issued until two years after that date.  The administrative law judge noted that although Dr. Gartland treated plaintiff for depression during her insured period, he did not offer an opinion that she could not work and his treatment notes were inconsistent with Dr. Oduwole's later limitations.

In assessing plaintiff's credibility, the administrative law judge considered statements concerning the intensity, persistence and limiting effects of her symptoms and determined that they were not supported by the evidence.  He noted that it was questionable whether plaintiff even had a medically determinable impairment that reasonably could be expected to produce her alleged symptoms:

16

There is not a showing in this case as required above.  Furthermore, the citation of an indeterminate number or "some" tender points would generally be considered technically insufficient in itself to warrant the diagnosis of fibromyalgia in the record.  There is little if any objective medical evidence other than the claimant's complaints, and an alleged indeterminate number of tender points.

. . .

Conceding that the claimant does in fact have an impairment which might be expected to cause pain, fatigue, and other complaints, those complaints have been rather non-specific and vague.  She told Dr. Robert Braco during his one consultative examination that there was nothing that was not sore and no matter where she was touched she alleged pain.

AR 21.

The administrative law judge noted that plaintiff had not followed the advice of her physicians to exercise, engage in aerobics or do yoga.  He stated that plaintiff did not engage in "any pain control modalities or treatment other than medication refills."  AR 21.  The administrative law judge noted that plaintiff had told Dr. Fanopoulos that Cymbalta helped greatly.  He further found that the medical evidence did not indicate plaintiff was taking other more potent pain medications or that there were any significant side-effects to the medications she takes.  Id.

In addition to the medical evidence, the administrative law judge considered other relevant factors listed in the regulation.  He indicated that although plaintiff testified at the hearing that her activities were very limited, treatment notes dated June 13, 2006,

17

September 12, 2006 and March 26, 2007 show that she generally was doing well.  He pointed out that on June 13, 2006, plaintiff told Dr. Fanopoulos that she had just returned from a vacation in Sweden and had a wonderful time.  The administrative law judge found that this report was not consistent with Dr. Braco's assessment that plaintiff could not sit for long, lift any more than six pounds, stand or sit for more than an hour and stand or walk for any more than a total of four hours a day.  AR 21.  He concluded that Dr. Fanopoulos saw plaintiff every several months usually only to refill her medications, which included Trazodone, Cymbalta and Elavil.  AR 22.  The administrative law judge also mentioned that plaintiff had claimed unemployment compensation after leaving her last job, which conflicted with the allegation to the social security agency that she was so disabled she could not work.  AR 21.

The administrative law judge found that plaintiff was able to perform her past work as a cashier and courier as well as a significant number of other jobs in the economy, namely packaging jobs, assembly jobs, office helper jobs and cashier jobs.  In reaching this conclusion, the judge relied on the testimony of the vocational expert, finding it to be consistent with the Dictionary of Occupational Titles.  AR 23.

OPINION

A.  <u>Standard of Review</u>

The standard by which a federal court reviews a final decision by the commissioner is well settled:  the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be.  <u>Clifford v. Apfel</u>, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner.  <u>Edwards v. Sullivan</u>, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, <u>id.</u>, and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  <u>Steele v. Barnhart</u>, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion.  <u>Zurawski v. Halter</u>, 245 F.3d 881, 887 (7th Cir. 2001).

19

B. <u>Fibromyalgia</u>

Plaintiff contends that the administrative law judge did not properly evaluate the severity and limiting effects of her fibromyalgia.  Although the administrative law judge reluctantly found that plaintiff had a severe impairment of fibromyalgia and conceded that it reasonably could be expected to produce her alleged symptoms, he questioned her diagnosis and its limiting effects because the diagnosis rested primarily on her subjective complaints and an "unspecific number of tender points."  AR 20-1.  He discounted the opinions of Dr. Braco and Dr. Fanopoulos in favor of those of the state agency physicians primarily because Braco's and Fanopoulos's opinions were based on plaintiff's "non-specific and vague" complaints of overall pain and fatigue, which he did not find credible.  <u>Diaz v. Chater</u>, 55 F.3d 300, 307 (7th Cir. 1995) (administrative law judge could properly reject portion of physician's report that was based upon plaintiff's own statements of functional restrictions where administrative law judge properly found that plaintiff's subjective statements were not credible).  For the reasons discussed below, I find the administrative law judge's determinations to be based on misguided reasoning and flawed conclusions.

1.  <u>Treating physicians</u>

Although an administrative law judge must consider all medical opinions of record, he is not bound by those opinions.  <u>Haynes v. Barnhart</u>, 416 F.3d 621, 630 (7th Cir. 2005).

"[T]he weight properly to be given to testimony or other evidence of a treating physician depends on circumstances."   <u>Hofslien v. Barnhart</u>, 439 F.3d 375, 377 (7th Cir. 2006). When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion.   <u>Id.</u>; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).   When, however, the record contains well-supported contradictory evidence, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation.   <u>Id.</u>   An administrative law judge must provide "good reasons" for the weight he gives a treating source opinion.   <u>Id.</u>   He also must base his decision on substantial evidence and not mere speculation.   <u>White v. Apfel</u>, 167 F.3d 369, 375 (7th Cir. 1999).

In this case, most of the reasons offered by the administrative law judge for discounting the opinions of plaintiff's treating physicians suggest his lack of understanding of fibromyalgia.   <u>Bauer v. Astrue</u>, __ F.3d __, No. 07-3325, 2008 WL 2652887, at *2 (7th Cir. Jul. 8, 2008) (finding same in case involving bipolar disorder).   The Court of Appeals for the Seventh Circuit has explained that:

> [Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective.   There are no laboratory tests for the presence or severity of fibromyalgia.   The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and---the only symptom that discriminates between it and other diseases of a rheumatic

character–multiple tender spots. . . that when pressed firmly cause the patient
to flinch.

Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996).

During the period at issue in this case, plaintiff was diagnosed with fibromyalgia by
two rheumatologists:  Drs. Shamim and Fanopoulos.  The administrative law judge took
issue with the fact that neither doctor specified the actual number of plaintiff's tender spots.
The administrative law judge is correct that the rule of thumb is that a patient must have
tenderness in at least 11 of 18 fixed locations throughout the body.  Id.; The American
College of Rheumatology 1990 Criteris for the Classification of Fibromyalgia:  Report of the
Multicenter Criteria Committee, 33 Arthritis & Rheumatism 160 (1990).  However, as
rheumatologists, plaintiff's physicians would be familiar with the diagnostic criteria for the
disease.  Sarchet, 78 F.3d at 308 (fibromyalgia is a rheumatological disorder and relevant
specialist is a rheumatologist).  Further, nothing in the record indicates that plaintiff did not
meet the criteria.  Dr. Shamim diagnosed plaintiff with fibromyalgia with chronic wide
spread soft tissue pain, irritable bowel syndrome, recurrent headaches, sleep disorder, mitral
prolapse and presence of multiple soft tissue tender points in all four quadrants.  Dr.
Fanopoulos confirmed this diagnosis a year later, noting that she had moderate tender points
on palpation and a diagnosis of moderate fibromyalgia.  The record contains no
contradictory evidence.

22

The administrative law judge discounted Dr. Braco's 2005 opinion that plaintiff could not perform light work and would require more than three days of absences a month. Although he correctly noted that the assessment postdated plaintiff's insured period, he also stated that he discounted the opinion because it was based on plaintiff's subjective complaints of overall pain and fatigue. He criticized her complaints as non-specific and vague, pointing to the fact that she told Dr. Braco that she hurt all over and was sore wherever she was touched. However, the administrative law judge clearly misunderstands fibromyalgia. As the court of appeals in <u>Sarchet</u> made clear, the symptoms of fibromyalgia are entirely subjective and include complaints of "pain all over." <u>Sarchet</u> 78 F.3d at 306.

The administrative law judge stated that he discounted Dr. Fanopoulos's endorsement of Dr. Braco's opinion that plaintiff could not work because it was not consistent with Fanopoulos's contemporary or subsequent treatment notes, the contemporary diagnosis or plaintiff's subsequent activities. AR 23. Specifically, the administrative law judge noted that on various visits, Dr. Fanopoulos found no joint swelling, normal x-rays and bone scans, no synovitis and only some tenderness. However, the reliance on "the lack of any evidence of objectively discernible symptoms, such as swelling of the joints," reflects a "pervasive misunderstanding of the disease." <u>Sarchet</u>, 78 F.3d at 307. "Since swelling of the joints is not a symptom of fibromyalgia, its absence is no more indicative that the patient's fibromyalgia is not disabling than the absence of headache is an indication that a patient's

23

prostate cancer is not advanced." <u>Id.</u>  Therefore, it was improper for the administrative law judge to discount Dr. Fanopoulos's opinion simply because plaintiff had normal test results.

The administrative law judge also concluded that plaintiff's condition was not as severe as Dr. Fanopoulos claimed because he diagnosed her at that time with no more than moderate fibromyalgia and made no further reference to her condition until April 2, 2004. However, I disagree that these facts necessarily show that Dr. Fanopoulos was overstating plaintiff's limitations.  Although he initially diagnosed plaintiff with moderate fibromyalgia, the record shows that by November 2003, he had assessed her condition as severe.  Further, Dr. Fanopoulos treated plaintiff for fibromyalgia regularly, including in February 2004.

Finally, the administrative law judge found the assessed limitations inconsistent with plaintiff's subsequent activities.  In support, he cited treatment notes from June 13, 2006, September 12, 2006 and March 26, 2007, which indicate that plaintiff was "doing well" and had taken a trip to Sweden.  However, these treatment notes were written by Dr. Oduwole, plaintiff's psychiatrist, who was describing her mental well-being.  Although plaintiff's trip to Sweden is certainly relevant to her physical limitations, it occurred after the expiration of her insured period.  Further, general observations that a patient was "ok" or "doing quite well" on a particular office visit do not constitute substantial evidence supporting the rejection of a treating physician's opinion.  <u>Bauer</u>, 2008 WL 2652887, at *2-3.  "A person

24

who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days."  Id. at *3.

In sum, I am not convinced that the administrative law judge conducted a critical review of the evidence or built a logical and accurate bridge from the evidence to his conclusion that Dr. Fanopoulos's opinion should be discounted.  Contrary to Sarchet and the directive of the appeals' council, the administrative law judge repeatedly referred to the lack of objective medical evidence in his decision.  In doing so, the administrative law judge impermissibly drew his own conclusions about the severity of plaintiff's condition from the medical evidence.  Blakes ex rel. Wolfe v. Barnhart, 331 F. 3d 565, 570 (7th Cir. 2002) (administrative law judge improperly "play[s] doctor" when he draws medical conclusion without expert evidence); Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000) ("an ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record")(citation omitted); Alexander v. Barnhart, 287 F. Supp. 2d 944, 963-64 (E.D. Wis. 2003) (administrative law judge erred in finding that claimant did not have fibromyalgia where number of tender points not specified in medical record).

As plaintiff indicates, if the administrative law judge had questions about the nature or severity of her fibromyalgia, he could have contacted her physicians for clarification or obtained evidence from a qualified medical expert.  20 C.F.R. § 404.1527.  In fact, the

25

appeals council had instructed the administrative law judge to obtain evidence from a medical expert, preferably a rheumatologist, to clarify the nature and severity of the plaintiff's fibromyalgia during the period at issue.  Instead, he again called Dr. Larrabee, a psychologist with no expertise in treating fibromyalgia, to testify at the hearing on remand and relied on the limitations assessed by a state agency consulting physician with no apparent specialty in fibromyalgia.  Bauer, 2008 WL 2652887, at *2 (noting consulting physician did not identify flaw in treating physicians' analysis but merely expressed contrary view after reading medical files).

2.  Credibility

In reversing and remanding the administrative law judge's first decision, the appeals council stated that the administrative law judge did not properly consider the plaintiff's complaints of fatigue and whole body pain in his first decision and directed him to evaluate plaintiff's credibility in accordance with the factors set forth in Social Security Ruling 96-7p and 20 C.F.R. 404.1529.  The administrative law judge failed to comply with the appeals council's directive in his second decision.

Under Social Security Ruling 96-7p, an administrative law judge must follow a two-step process in evaluating an individual's own description of his or her impairments:  1) determine whether an "underlying medically determinable physical or mental impairment"

26

could reasonably be expected to produce the individual's pain or other symptoms; and 2) if such a determination is made, evaluate the "intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities."  Social Security Ruling 96-7p, 1996 WL 374186, *1 (1996); see also Scheck v. Barnhart, 357 F.3d 697, 702 (7th Cir. 2004).  When conducting this evaluation, the administrative law judge may not reject the claimant's statements regarding her symptoms on the sole ground that the statements are not substantiated by objective medical evidence.  Instead, the administrative law judge must consider the entire case record to determine whether the individual's statements are credible.  Relevant factors the administrative law judge must evaluate are the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; other treatment or measures taken for relief of pain; the individual's prior work record and efforts to work; and any other factors concerning the individual's functional limitations and restrictions.  SSR 96-7p; 20 C.F.R. §§ 404.1529(c), 416.929(c).  See also Scheck, 357 F.3d at 703; Zurawski, 245 F.3d at 887.

Although the administrative law judge lists the factors to be considered under Social Security Ruling 96-7p, he failed to consider them adequately.  He made no mention of

27

plaintiff's daily activities during the period from March 2000 to September 2003. The record shows that plaintiff merely helps with some cooking, laundry and washing dishes. She spends a lot of time taking naps and can no longer crochet, do bead work or sew. Instead of discussing any of this evidence, the administrative law judge mentions only that plaintiff traveled to Sweden in 2006. Although this fact may call into doubt plaintiff's testimony about her activity level in 2006, it does not establish her activity level during her alleged period of disability. Further, the administrative law judge failed to follow the directive of the appeals council to address the corroborating testimony of plaintiff's husband concerning her pain and limited daily activities.

The administrative law judge's references to plaintiff's medications are not consistent with the evidence in the record. At one point he states that plaintiff was taking only Cymbalta and at another point states that she takes Trazadone and Elavil as well. At the first hearing, plaintiff testified that she took Trazodone, Topomax, Celebrex and Skelaxin for pain and Cymbalta and Amitriptyline for depression. She also testified that these medications caused side effects including dizziness, drowsiness, blurred vision and dry mouth. The administrative law judge failed to consider all the medications plaintiff was taking during the insured period or the side effects that they caused.

The administrative law judge also failed to consider plaintiff's other treatment and pain relief measures. He noted that she failed to engage in exercise, aerobics or yoga as

28

advised by Dr. Fanopoulos in 2003.  However, he did not address plaintiff's testimony that she took warm showers, rested on the couch to alleviate pain and took naps because of her fatigue.  His statement that plaintiff did not engage in "any pain control modalities or treatment other than medication refills" ignores her testimony and minimizes the importance of the medications that she was taking for her pain.

The administrative law judge did not address the location, duration, frequency and intensity of plaintiff's pain.  Plaintiff testified that she had daily body pain in her neck, back, hips and legs.  Her husband also testified that plaintiff was in constant pain.  This testimony is consistent with evidence in the record that plaintiff reported pain during her insured period and that two rheumatologists found that she had multiple tender points.

In discussing plaintiff's credibility, the administrative law judge noted that she had collected unemployment benefits after her disability onset date.  Because plaintiff had amended her disability onset date until March 2000 at the hearing, the administrative law judge's statement was not correct.

As discussed above, subjective complaints in this case are more important than in other cases because they are clinical indicators of the disease of fibromyalgia.  After considering the record as a whole, I cannot uphold the administrative law judge's credibility finding.  Even though there may be enough evidence in the record to support a conclusion that plaintiff was not disabled during the relevant period, the administrative law judge

29

committed significant logical and legal errors reaching that conclusion.  Accordingly, this case must be reversed and remanded to the commissioner.  <u>Sarchet</u>, 78 F. 3d at 307 ("we cannot uphold a decision be an administrative agency . . . if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact does not build an accurate and logical bridge between the evidence and the result.").

On remand the commissioner shall consider the nature and severity of plaintiff's fibromyalgia during the period at issue, particularly her fatigue and over all body pain.  As the appeals council directed, a medical expert should be consulted to aid in this determination.  In addition, the commissioner should consider plaintiff's credibility carefully according to the regulations in determining what weight to give to her complaints of pain and fatigue.

## C.  <u>Mental Impairments</u>

Plaintiff argues that the administrative law judge ignored the presence of plaintiff's panic attacks, post-traumatic stress disorder and phobia and failed to include limitations caused by these impairments in his hypothetical question to the vocational expert.  Plaintiff is correct.  The administrative law judge failed to address the evidence of plaintiff's panic attacks, including the treatment notes of Dr. Gartland and the testimony of plaintiff and her husband.  On remand, the commissioner should reconsider whether the anxiety disorder that

Dr. Larrabee identified was a severe impairment and whether it caused plaintiff additional work limitations.

Finally, I recommend that the commissioner reassign this case to a new administrative law judge. The current administrative law judge has reviewed the record twice and his comments at the hearing and in his decision suggest that he might be biased against plaintiff's fibromyalgia claim. <u>Sarchet</u>, 78 F, 3d at 309 (recommending remand to different administrative law judge where tone of the his opinion suggested unshakeable commitment to denial of plaintiff's claim).


ORDER

IT IS ORDERED that the decision of defendant Michael Astrue, Commissioner of Social Security, denying plaintiff Regina D. Kurth's application for disability insurance benefits is REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 30th day of July, 2008.

BY THE COURT:

_____

BARBARA B. CRABB
District Judge

31